United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 21, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-10776

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLAY ALLEN BENTON, JR.,

Defendant-Appellant,

_____

Appeals from the United States District Court for the
Northern District of Texas, Dallas
3:01-CR-196-R

_____

Before KING, Chief Judge, and DAVIS and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Appellant Clay Allen Benton, Jr. pleaded guilty to one count of conspiracy to possess with

intent to distribute and the distribution of 3,4-methylenedioxymethamphetamine (MDMA/Ecstasy),

a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c). He appeals

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

from the sentence imposed by the district court.

Benton argues that the district court erred in applying the May 1, 2001 guideline amendments, in violation of the Ex Post Facto Clause. He asserts that his sentence should be vacated and his case remanded to the district court for resentencing. "A sentencing court must apply the version of the sentencing guidelines effective at the time of sentencing unless application of that version would violate the Ex Post Facto Clause of the Constitution." *United States v. Kimler,* 167 F.3d 889, 893 (5th Cir. 1999)(citations omitted); *accord* § 1B1.11(b)(1). We have recognized that "an increase in sentence based on an amendment to the guidelines effective after the offense was committed" constitutes an Ex Post Facto violation. *United States v. Thomas*, 12 F.3d 1350, 1370 (5th Cir. 1994)(internal quotation marks and citation omitted).

In this case, it is undisputed that application of the May 1, 2001 amendments resulted in a harsher penalty. Under the prior version of the guidelines, one gram of MDMA/Ecstasy was equal to 35 grams of marijuana. § 2D1.1, comment. (n.10) (Nov. 2000) (drug equivalency table). Therefore, the 2500 grams of MDMA/Ecstasy for which Benton was accountable would have been equal to 87.5 kilograms of marijuana. Benton's base offense level would then have been 24. *See* § 2D1.1(c)(8)(offense level is 24 when at least 80 kilograms, but less than 100 kilograms, of marijuana is involved). Accordingly, after the three-level reduction for acceptance of responsibility, and the three-level reduction for substantial assistance, Benton's total offense level would have been 18. Benton's resulting guideline range would have been 27 to 33 months. *See* U.S.S.G., Chap. 5, Sentencing Table. In contrast, under the May 1, 2001 amendments, Benton's guideline range was 51 to 63 months, and he received a sentence of 51 months.

This Court has held, however, that a conspiracy "is a continuing offense. So long as there is

evidence that the conspiracy continued after the effective date of the [amendments to the] guidelines, the Ex Post Facto Clause is not violated." *Thomas,* 12 F.3d at 1370-71 (internal quotation marks and citation omitted). A district court's factual finding that a conspiracy continued for guidelines purposes is a factual finding reviewed for clear error. *Id.* at 1371. Benton argues that the amendments were inapplicable to him because he withdrew from the conspiracy prior to May 1, 2001. "A defendant is presumed to continue in a conspiracy unless he makes a substantial affirmative showing of withdrawal, abandonment, or defeat of the conspiratorial purpose." *United States v. Torres*, 114 F.3d 520, 525 (5th Cir. 1997). "To establish withdrawal a defendant bears the burden of demonstrating affirmative acts inconsistent with the object of the conspiracy that are communicated in a manner reasonably calculated to reach conspirators." *United States v. Schorovsky*, 202 F.3d 727, 729 (5th Cir. 2000)(footnote omitted).

Benton maintains that he withdrew from the conspiracy in March 2001, when he provided substantial information to the government which resulted in the demise of the conspiracy. The affirmative act of a full confession to the authorities may constitute a withdrawal from the conspiracy. *E.g., United States v. Piper,* 298 F.3d 47, 53 (1st Cir. 2002); *United States v. Jannotti*, 729 F.2d 213, 221 (3d Cir. 1984). As stated by the government in its § 5K1.1 motion for downward departure, in a March 2001 meeting, Benton identified other members of the conspiracy; the information he provided made it easier for law enforcement to identify addresses, vehicles, and other locations frequented by the conspirators; and several members of the conspiracy were indicted based in part on information Benton provided. The motion also provided that: "It should be noted that Clay BENTON's cooperation was provided to law enforcement several months prior to the indictment [which was returned in July 2001] and that the information assisted substantially in furthering the

3

investigation that ultimately resulted in the dismantling of [the] MDMA/Ecstasy Organization."

In its brief, the government acknowledges its "apparent adoption [at the district court level] of Benton's position that he had in fact withdrawn from the conspiracy prior to the May 1, 2001 effective date."[1] Nevertheless, the government contends that the district court did not err in applying the amendments because the PSR demonstrated that Benton remained in the conspiracy after he substantially assisted the government and beyond May 1, 2001. The government points to the following information included in the PSR listed under the heading of "Pending Charges": on April 26, 2001, Benton was arrested for possession of 10,268.32 grams of gamma-hydroxybutyrate (GHB); and on May 12, 2001, Benton was again arrested for possession of GHB.

We note that the district court never expressly adopted the PSR. However, it did so implicitly by overruling Benton's objections to the PSR and by sentencing Benton in accordance with the PSR. The section of the PSR describing the offense conduct of the instant MDMA/Ecstasy conspiracy did not include the GHB arrest,[2] and the PSR did not hold Benton accountable for any amount of GHB in determining his sentence. Indeed, the facts set forth in the PSR indicate that Benton's "last known involvement was in August 2000." Therefore, we disagree with the government's argument that the PSR establishes that Benton's possession of the GHB was part of the instant MDMA/Ecstacy conspiracy or that Benton continued to participate in the conspiracy after he gave substantial

---

[1] In a footnote, the government asserts that a "thorough review of the record reflects, however, that [it] agreed Benton had withdrawn from the conspiracy as of May 1, 2001, and that his last known involvement in the distribution of MDMA/ecstasy occurred in August of 2000." We do not agree with the government's assertion that the record reflects that its position was that Benton withdrew from the conspiracy as of May 1, 2001, the effective date of the amendment.

[2] The only reference in the PSR to the GHB in question is contained within the section labeled "Pending Charges." Those charges were listed as pending in Dallas County Criminal District Court 3.

assistance to the government.

Additionally, the government made clear at oral argument that it does not rely upon the reasonable foreseeability of any acts of Benton's co-conspirators to establish that the conspiracy continued past the effective date of the amendments. Instead, it relies solely upon Benton's conduct. This position is understandable in light of the fact that the record is devoid of any specific findings regarding whether the actions of Benton's co-conspirators on or after May 1, 2001, were reasonably foreseeable to him. *See United States v. Foy,* 28 F.3d 464, 476-77 (5th Cir. 1994) (vacating and remanding because the district court failed to make specific findings of foreseeability).[3]

Neither the PSR nor the district court expressly found that Benton had failed to establish that he withdrew. Nonetheless, by rejecting Benton's contentions, the district court apparently implicitly so found. In view of the undisputed substantial assistance Benton provided to the authorities prior to the effective date of the amendments, the findings in the PSR and the factual basis that Benton's last known involvement in the conspiracy was prior to the effective date of the amendments, and the lack of findings indicating that it was reasonably foreseeable that the conspiracy would continue past the effective date of the amendments, we are persuaded t hat the district court erred in implicitly finding that there was no showing of withdrawal prior to May 1, 2001. We therefore vacate Benton's

---

[3] It is well established that relevant conduct under the sentencing guidelines includes all reasonably foreseeable acts of coconspirators in furtherance of the conspiracy. *See* § 1B1.3(a)(1)(B). Nonetheless, "the reasonable foreseeability of all drug sales does not automatically follow from membership in the conspiracy." *United States v. Wilson*, 116 F.3d 1066, 1077 (5th Cir.1997), *vacated in part sub. nom. United States v. Brown*, 123 F.3d 213 (5th Cir.1997) (en banc). To determine a defendant's sentence for participation in a drug conspiracy, the district court must make the following findings: (1) when the defendant joined the conspiracy; (2) the quantities of drugs that were within the scope of the agreement; and (3) the quantities the defendant could reasonably foresee being distributed by the conspiracy. *Id.* at 1076.

sentence and remand for resentencing.[4]

VACATED and REMANDED.

---

   [4] At oral argument, the government also argued essentially that any error was harmless based upon the evidence of Benton's involvement with GHB that occurred after the effective date of the amendments. However, because it is unclear whether the district court would have sentenced Benton to the same sentence had it made the required findings, our precedent instructs that a remand is necessary. *United States v. Tello,* 9 F.3d 1119, 1130 (5th Cir. 1993).